IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Trovon Keith, ) | C/A No.: 1:13-2721-RMG-SVH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| Nancy C. Merchant, Tamara Conwell, ) | REPORT AND RECOMMENDATION |
| Maria Leggins, Amy Enloe, Captain ) | |
| Miller, William R. Byars Jr., Dayne ) | |
| Haile, and Captain Rhonda Abston, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff Trovon Keith, proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights while incarcerated at Perry Correctional Institution ("PCI") in the custody of the South Carolina Department of Corrections ("SCDC"). Plaintiff sues the following current or former SCDC employees: Nancy C. Merchant, Tamara Conwell, Maria Leggins, Amy Enloe, Captain Miller, William R. Byars Jr., Dayne Haile, and Captain Rhonda Abston ("Defendants").

This matter is before the court on the following motions: (1) Plaintiff's motion for summary judgment [ECF No. 73], (2) Defendants' motion for summary judgment [ECF No. 94], and (3) Plaintiff's motion to voluntarily dismiss Conwell [ECF No. 104]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment procedures and the possible consequences if he failed to respond adequately to Defendants' motion. [ECF No. 96]. The motions having been

fully briefed [ECF No. 105], they are ripe for disposition.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civ. Rule 73.02(B)(2)(f) (D.S.C.). Because these motions are dispositive, this report and recommendation is entered for review by the district judge. For the following reasons, the undersigned recommends that (1) Plaintiff's motion for summary judgment [ECF No. 73] be denied, (2) Defendants' motion for summary judgment [ECF No. 94] be granted, and (3) Plaintiff's motion to voluntarily dismiss Conwell [ECF No. 104] be granted.

I.      Factual Background

Plaintiff is housed in the Special Management Unit ("SMU") at PCI. [ECF No. 66-1 at 2–3]. Plaintiff claims that a July 2013 change in the prison policy regarding inmate correspondence violates his right to free speech and expression under the First Amendment. *Id.* at 3. SCDC revised its correspondence policy on May 1, 2013. [ECF No. 94-2 at ¶ 3]. The new policy provides that SMU inmates are provided one hygiene packet per month that contains two envelopes for correspondence, and they are not entitled to purchase additional general mailing supplies. [ECF Nos. 94-2 at ¶ 4; 66-1 at 3–4]. The policy does not apply to legal mail. [ECF No. 94-2 at ¶ 4]. Plaintiff sues Merchant, Conwell, Leggins, Miller, Byars, Haile, and Abston for allegedly promulgating and enforcing the revised policy. [ECF Nos. 66; 66-1 at 3– 4, 6–7, 9–11, 25]. Plaintiff further alleges that Merchant refused to allow Plaintiff to receive records requested from the Federal Bureau of Investigations ("FBI") under the Freedom of Information Act

("FOIA"). [ECF No. 66-1 at 4–6]. Plaintiff alleges that SCDC's policy prohibiting SMU inmates from receiving pages printed from the internet and crossword puzzles also violates his rights. [ECF No. 66-1 at 7, 9–11].

Plaintiff sues Enloe for allegedly failing to provide medical treatment for a skin condition and for refusing to assist Plaintiff in obtaining a better mattress to alleviate back pain from his scoliosis. *Id.* at 7–8. Plaintiff seeks monetary damages and injunctive relief. *Id.* at 13.

II.   Discussion

   A.   Plaintiff's Motion to Voluntarily Dismiss Conwell

On August 8, 2014, Plaintiff sought to voluntarily dismiss Conwell from this case. [ECF No. 104]. Defendants having filed no response to Plaintiff's motion, it appears they do not oppose the motion. Therefore, the undersigned recommends the district judge grant Plaintiff's motion to voluntarily dismiss Conwell.

   B.   Summary Judgment Standard

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by

"citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

C.   Analysis

Defendants' motion for summary judgment [ECF No. 94] serves as their response to Plaintiff's motion for summary judgment [ECF No. 73], and Plaintiff's response to Defendants' motion [Entry No. 105] restates the arguments in his motion for summary

4

judgment. Therefore, the undersigned analyzes the motions for summary judgment together.

        1.    First Amendment

Plaintiff alleges that SCDC's correspondence policy violates his First Amendment rights because it prohibits SMU inmates from sending more than two envelopes of general correspondence per month, receiving responses to some FOIA requests, and receiving pages printed from the internet or crossword puzzles. [ECF No. 66-1 at 3–7]. Defendants argue that the revised policy is constitutional because it is reasonably-related to a legitimate penological interest. [ECF No. 94-1 at 4].

As a prison inmate, Plaintiff retains certain First Amendment rights. *Thornburgh v. Abbott*, 490 U.S. 401, 407–408 (1989). However, an inmate's constitutional rights are not unrestricted. Prisons may adopt regulations that infringe upon an inmate's constitutional rights as long as the regulations are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). The court must consider four factors in determining whether SCDC's correspondence policy is constitutionally permissible: (1) whether the policy is logically connected to the legitimate government interest invoked to justify it; (2) whether the inmate has alternative means of exercising the right in question; (3) the impact that accommodation of the asserted right would have on other inmates, prison officials, and the allocation of prison resources; and (4) whether there is a ready alternative that would fully accommodate the inmate's rights. *Turner*, 482 U.S. at 89–90. In applying these factors, the court must "respect the determinations of

prison officials." *United States v. Stotts*, 925 F.2d 83, 86 (4th Cir. 1991). The plaintiff bears the ultimate burden of establishing that a prison regulation is unconstitutional. *Hause v. Vaught*, 993 F.2d 1079, 1082 (4th Cir. 1993).

Leggins previously served as the SCDC Institutional Mailroom Coordinator and has submitted an affidavit stating that SMU inmates require more intensive supervision and monitoring. [ECF No. 94-2 at ¶¶ 1, 5]. Leggins states that SCDC restricts certain privileges for SMU inmatesin an effort to promote good behavior and conformance with SCDC rules and regulations. *Id*. at ¶ 6. Leggins noted the correspondence policy was revised statewide in 2013 after a 2–3 year process during which institutional safety concerns were weighed against SMU inmates' correspondence privileges. *Id*. at ¶ 3. Leggins states that one of the major safety concerns with SMU inmates is their trafficking/trading correspondence materials sucha as pens, papers, and postage. *Id*. at ¶ 4.

Applying the *Turner* factors, the undersigned finds that the revised correspondence policy as applied to SMU inmates is reasonably related to the legitimate governmental interests of providing an incentive for difficult inmates to improve behavior. *See Beard v. Banks*, 548 U.S. 521 (2006) (finding that a policy that restricted inmate correspondence for inmates in the long-term segregation unit was justified by the need to provide particularly difficult prisoners with increased incentives for better prison behavior, and thus policy did not violate First Amendment rights of such prisoners.); *Procunier v. Martinez*, 416 U.S. 396, 413 (1974) (finding that legitimate penological

6

interests include "security, order, and rehabilitation"). Additionally, the policy is reasonably related to the security concern of preventing SMU inmates from using mailing supplies as currency. *See Johnson v. Goord*, 445 F.3d 532, 535 (2d Cir. 2006) (finding that a prison policy limiting inmates to one free stamp was reasonably related to a legitimate penological interest because stamps can be used as currency and engender conflict among inmates).

The policy does not foreclose Plaintiff from exercising his First Amendment rights through the mail, but instead restricts him to two envelopes of outgoing correspondence per month while he is detained in the SMU. Defendants argue that the regulation also relieves the burden on corrections officers, as they are already responsible for meal delivery and tray retrieval; delivery of hygiene supplies; escorting nurses for medication delivery; escorting prisoners to recreation; showers; and sick call; mail delivery; cell checks; attending disciplinary and classification hearings; laundry services; supervising cell cleaning; cell searches; coordinating legal calls and visits; and escorting grievance coordinators, chaplains, and the library cart. [ECF No. 94-1 at 5].

Finally, Plaintiff has identified no ready alternatives that meet Defendants' legitimate objectives. "*Turner* does not impose a least-restrictive alternative test, but asks instead whether the prisoner has pointed to some obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a *de minimis* cost to the valid penological goal." *Overton v. Bazzetta,* 539 U.S. 126, 136 (2003). The *Overton* Court described this as a high standard to meet. *Id*. As found by the Supreme Court and

7

other courts, restrictions on privileges are an effective "management technique" in controlling "high-security prisoners who have few other privileges to lose." *Id*. Plaintiff has not met his burden to show that the revised correspondence policy violates his First Amendment rights.[1]

To the extent Plaintiff alleges the denial of crossword puzzles and pages printed from the internet is unconstitutional, he has failed to meet his burden of showing such a regulation is unconstitutional. *See Beard v. Banks*, 548 U.S. 521 (2006) (finding that a prison policy forbidding specially dangerous and recalcitrant inmates from possessing newspapers, magazines, and photographs was constitutional); *see also Keith v. Cartledge*, C/A No. 1:13-1131-RMG, 2014 WL 3867838 *2 (D.S.C. Aug. 6, 2014) (finding that such policy was constitutional in a prior case brought by Plaintiff).

Plaintiff's claim that he should have been able to receive materials in response to his FOIA request to the FBI for material related to Clarence Smith[2] also fails. Defendants have submitted evidence that such material is not approved for prisoners, as it constitutes "STG/Gang related material." [ECF No. 94-3 at 2].

Accordingly, the undersigned recommends Defendants be granted summary

---

[1] Plaintiff argues that he has been unable to present facts to support his case because Defendants have not provided him with the discovery he requested. [ECF No. 105 at 5, 105-2]. Although Plaintiff complains that he has not been able to discover the individuals responsible for the change in policy, *id*., such information is not relevant to whether the policy is constitutional. The undersigned has previously considered and denied Plaintiff's motions to compel in this case. [ECF Nos. 56, 86].

[2] Plaintiff claims Clarence Smith created "the organization [he is] a part of an[d] is responsible for my established belief/religion, so to speak." [ECF No. 66-1 at 4]. Defendants submitted materials that refer to Smith as "Clarence X" and note they consider the materials to be gang-related. [ECF No. 94-3 at 2].

8

judgment on Plaintiff's First Amendment claims.

        2.        Deliberate Indifference to Medical Condition

Plaintiff contends that Enloe was deliberately indifferent to his medical needs when she failed to provide medical treatment for a skin condition or provide him with a better mattress to alleviate his back pain. [ECF No. 66-1 at 7–8]. Defendants argue that Plaintiff has failed to proffer any evidence that he has a serious or significant physical injury, failed to demonstrate a substantial risk of serious harm, and failed to show that Enloe was deliberately indifferent to his medical care. [ECF No. 94-1 at 7]. Plaintiff claims that Enloe told him to clean his body with hot water if he could not use the soap provided. [ECF No. 105 at 3]. Plaintiff argues that the denial of his request for different soap has caused him to have dark scars, black bumps, and damaged skin. *Id.*

In the case of *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments that "involve the unnecessary and wanton infliction of pain." *Id.* at 103 (quoting *Gregg v. Georgia*, 428 U.S. 153, 169–73 (1976)). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.

*Estelle*, 429 U.S. at 103–05 (citations and footnotes omitted). Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was

9

careful to note that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation. *Id.*

The Fourth Circuit has also considered this issue in the case of *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." *Id.* at 851 (citations omitted). Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. *Estelle*, 429 U.S. at 104; *Farmer v. Brennan*, 511 U.S. 825 (1994); *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir. 1986).

Plaintiff has not demonstrated a claim of deliberate indifference to his serious medical needs, because he has not offered any evidence, other than his own conjecture or speculation, that he suffered from a serious or life threatening medical need. Plaintiff has also failed to offer any evidence that Defendants denied him medical care for his back pain and skin condition. Plaintiff's disagreement with the manner his medical needs were treated does not, in and of itself, state a constitutional violation. *See King v. U.S.* 536 Fed. App'x. 358, 362–63 (4th Cir. 2013). (finding that prisoners do not have a constitutional right to the treatment of their choice). The undersigned recommends Defendants be granted summary judgment on Plaintiff's medical indifference claim.

3. Civil Conspiracy

Defendants argue that Plaintiff has failed to allege any facts indicating that Defendants acted jointly to injure him and contend that Plaintiff's conclusory allegations are insufficient to state a claim for civil conspiracy. [ECF No. 94-1 at 8]. Under 42 U.S.C. § 1983 and § 1985, an alleged conspiracy must be pled and proved by concrete facts, not mere conclusory allegations. *Simmons v. Poe*, 47 F.3d 1370, 1376–77 (4th Cir. 1995); *Buschi v. Kirven*, 775 F.2d 1240, 1248 (4th Cir. 1985). In addition, the Supreme Court has held that, to establish a federal conspiracy claim under § 1985, a plaintiff must show that the alleged conspiracy is motivated by "some racial, or perhaps otherwise class-based invidiously discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *see also Trerice v. Summons*, 755 F.2d 1081, 1085 (4th Cir. 1985) (holding that neither the Supreme Court nor the Fourth Circuit has identified any classes other than racial or religious classes for a § 1985 claim). Plaintiff provides no concrete facts to demonstrate that Defendants came to a mutual understanding or acted jointly in concert to deprive him of any constitutional right. Plaintiff also fails to allege that Defendants acted with a discriminatory motive. The undersigned recommends Defendants be granted summary judgment on any conspiracy allegations asserted by Plaintiff.

4. Equal Protection

Plaintiff alleges that there are inmates in general population who were not placed in SMU after violating the same rules that he is accused of violating and can therefore purchase general mailing supplies. [ECF No. 105 at 4]. However, Plaintiff provides no

11

evidence of such a claim and does not allege intentional discrimination. *See Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (holding that to succeed on an equal protection claim, the plaintiff must show that he has been treated differently from others similarly situated and that the treatment was caused by intentional discrimination). Therefore, the undersigned recommends Defendants' motion for summary judgment be granted as to Plaintiff's equal protection claim.

### 5. Qualified Immunity

Defendants also move for summary judgment arguing that they are entitled to qualified immunity from Plaintiff's lawsuit. [ECF No. 94-1 at 10–11]. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Id*.

When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236.

In *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992), the Fourth Circuit further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

*Maciariello*, 973 F.2d at 298.

Plaintiff has failed to establish the existence of any constitutional deprivation. The record before the court shows that as to Plaintiff and the specific events at issue, these Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. They did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the discretionary exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, these Defendants are entitled to qualified immunity.

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that the district judge: (1) deny Plaintiff's motion for summary judgment [ECF No. 73], (2) grant Defendants' motion for summary judgment [ECF No. 94], and (3) grant Plaintiff's motion to voluntarily dismiss Conwell [ECF No. 104].

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

October 20, 2014                                          Shiva V. Hodges
Columbia, South Carolina                          United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

14

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).